**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNIE KECHICHIAN,<br><br>              Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>              Defendant. | Case No.  CV 15-00905-RAO<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**INTRODUCTION**

Annie Kechichian ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB") following an administrative law judge's ("ALJ") decision that she was not disabled under the Social Security Act.  Administrative Record ("AR") 29.  For the reasons stated below, the Commissioner's decision is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

/ / /

/ / /

/ / /

## II.

## PROCEEDINGS BELOW

On May 2, 2012, Plaintiff applied for DIB, alleging disability beginning November 7, 2010 (her alleged onset date ("AOD")).  AR 19.  Plaintiff's claim was denied on December 5, 2012.  *Id*.  On February 4, 2013, Plaintiff filed a written request for hearing, which was held on June 3, 2013.  *Id*.  Represented by counsel, Plaintiff appeared and testified.  *Id*.  On July 19, 2013, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act.[1]  *Id*. at 29. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  *Id*. at 1-6.  Plaintiff filed the instant action in this Court on February 9, 2015.  Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled.  20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her AOD.  AR 21.  At **step two**, the ALJ found that Plaintiff had the following severe impairments: thoracolumbar scoliosis; degenerative disc disease of the thoracolumbar spine; right wrist fracture, healed; left elbow radial head fracture, healed; history of left wrist sprain and history of right shoulder sprain.  *Id*.  At **step three**, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id*. (citations omitted).

At **step four**, the ALJ found that Plaintiff possessed the residual functional capacity ("RFC") to perform light work "except no more than occasional climbing of ramps/stairs, balancing, kneeling, stooping, crouching, crawling; no climbing of

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

1   ladder/rope/scaffolds; and frequent overhead reaching, handling and fingering on

2   the right." *Id.* at 22.  Based on her RFC, the ALJ found that Plaintiff could perform

3   her past relevant work as a bookkeeper.  *Id.* at 28.  Accordingly, the ALJ found that

4   Plaintiff was not disabled under the Social Security Act, from her AOD through the

5   date of his decision.  *Id.* at 29.

6                                        **III.**

7                          **STANDARD OF REVIEW**

8           Under 42 U.S.C. § 405(g), a district court may review the Commissioner's

9   decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are

10  supported by substantial evidence, and if the proper legal standards were applied.

11  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence'

12  means more than a mere scintilla, but less than a preponderance; it is such relevant

13  evidence as a reasonable person might accept as adequate to support a conclusion."

14  *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc.*

15  *Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial

16  evidence requirement "by setting out a detailed and thorough summary of the facts

17  and conflicting clinical evidence, stating his interpretation thereof, and making

18  findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*

19  *v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)).

20          "[T]he Commissioner's decision cannot be affirmed simply by isolating a

21  specific quantum of supporting evidence.  Rather, a court must consider the record

22  as a whole, weighing both evidence that supports and evidence that detracts from

23  the Secretary's conclusion."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.

24  2001) (citations and internal quotations omitted).  "'Where evidence is susceptible

25  to more than one rational interpretation,' the ALJ's decision should be upheld."

26  *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*

27  *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882

28  ("If the evidence can support either affirming or reversing the ALJ's conclusion, we

                                          3

may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.

## DISCUSSION

Plaintiff presents two issues: (1) whether the ALJ properly rejected Plaintiff's testimony concerning her pain and functional limitations; and (2) whether the ALJ properly evaluated the opinion of her treating physician, Atif J. Alaziz, M.D. *See* Memorandum in Support of Plaintiff's Complaint ("Pl. Memo.") at 1, Dkt. No. 21.

### A.   **Plaintiff's Credibility**

Plaintiff contends that the ALJ improperly rejected her testimony that she is unable to work "because he failed to offer any specific, clear and convincing reason to dismiss her credibility." Pl. Memo. at 2. Defendant contends "the ALJ's reasons for finding Plaintiff not fully credible are supported by substantial evidence." Memorandum in Support of Defendant's Answer ("Def. Memo.") at 2, Dkt. No. 22.

### 1.   **Plaintiff's Testimony**

Plaintiff testified that she and her husband receive $1,172 per month between his social security income and her private disability insurance. AR 37-38. Before her husband retired, they ran a business together, and Plaintiff opened her own business in 2004. *Id.* at 38-39. As of the hearing date, Plaintiff's business was being run by three full-time employees. *Id.* at 39. Plaintiff testified that while she used to do everything at her business, including counter helping, helping customers, doing alterations, and bookkeeping, she was no longer involved. *Id.* at 39-40.

Plaintiff testified that, in November 2010, she tripped over a rail, fell onto her forearms and knees, and then turned onto her right shoulder. *Id.* at 40. Plaintiff claimed that her resulting injuries caused constant lower back and left leg pain, and requires her to frequently change positions for relief. *Id.* at 41-42. Plaintiff later

4

testified that her "fractured elbow" was "getting bad again[,]" and that her shoulder still "doesn't go in a certain level." *Id*. at 45-46.  Plaintiff further testified that she took Lyrica, Xanax, and three over-the-counter medications, and had taken another medication before Lyrica, but stopped after it caused a bad reaction. *Id*. at 43-44.

The ALJ noted the record indicated Plaintiff had previously refused surgery and asked Plaintiff if she was still opposed. *Id*. at 41.  Plaintiff stated that she was, but was still debating it. *Id.*  Plaintiff explained that she was opposed to surgery because she was afraid.  Specifically, because she has low blood pressure, Plaintiff testified that she was "afraid that [she] might not wake up from anesthesia." *Id.* Plaintiff's aunt also had low blood pressure and died during surgery. *Id*. at 43.

Plaintiff's attorney asked Plaintiff to talk about her daily activities. *Id.* at 47. Plaintiff testified that she watches television, reads, "or move[s] around a little.  I mean, nothing special." *Id.*  Plaintiff also testified that she entertains her kids at her house when they come to visit, and does very basic chores around the house. *Id.*

### 2.   **Pertinent Law**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (2014) (quoting *Lingenfelter,* 504 F.3d at 1036) (internal quotation marks omitted).  If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id.* (quoting *Smolen v. Cater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  The ALJ must specifically identify what testimony was found to be not credible, and explain what

evidence undermines the testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "General findings are insufficient."  *Lester,* 81 F.3d at 834.

### 3.  <u>Analysis</u>

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms[,]" but further found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible.  AR 23.  The ALJ gave four reasons: (1) Plaintiff's testimony is not corroborated by the objective evidence; (2) Plaintiff rejected treatment options; (3) Plaintiff made inconsistent statements; and (4) Plaintiff's activities of daily living were more extensive than one would expect from a person alleging debilitating pain.  AR 23-28*.*  Because no malingering allegation was made, the ALJ's reasons must be clear and convincing.

#### a.    *Statements Inconsistent With Objective Medical Evidence*

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor…."  *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).  Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility.  *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (ALJs must evaluate a claimant's statements as to the intensity, persistence, and limiting effects of symptoms "in relation to the objective medical evidence and other evidence").  The ALJ found that the record does not support Plaintiff's "manifold complaints of pain."  AR 23-28.  Plaintiff contends that the ALJ's finding was improper, and that the record supports her "claims of pain and functional limitations."  Pl. Memo. at 3.

Early treatment notes arguably support the ALJ's conclusion.  For example, after a second fall on April 4, 2011, Dr. Molnar diagnosed "primarily contusional-type" injuries, found no "obvious underlying fractures[,]" and instructed Plaintiff to "limit her activities to tolerance" and offered her a "prescription NSAID[,]" which she declined in favor of an "over-the-counter anti-inflammatory medication[.]"  AR

6

24, 233-35.  Similarly, on October 28, 2011, Dr. Simic noted that Plaintiff's right shoulder pain, while present, was "tolerable," and improved with rest and physical therapy; and that Plaintiff chose "activity modification and home PT program" over "further treatment such as steroid injection or surgery."  AR 25, 216.  However, as the Commissioner notes, "[t]he ALJ acknowledged that the treatment notes reflect an apparent worsening of symptoms in December 2011 and continued complaints of aggravated symptoms through February 2013."  Def. Memo. at 4 (citing AR 25-28).  Indeed, Plaintiff's symptoms continued to progress to the point where Plaintiff and her physicians began attempting and considering invasive treatment options to address her symptoms.  *See* AR 25 (noting that Dr. Simic administered a cortisone injection in December 2011 and that he and Plaintiff discussed additional injections and surgery in February 2012), 27 (noting that Dr. Grossman recommended spinal fusion in September 2012 and that Dr. Gravori recommended microdecompression surgery with possible discectomy in February 2013); *see also* Pl. Memo. at 7-8.

Thus, the Court finds that the ALJ's inconsistency finding was neither "clear and convincing" nor supported by substantial evidence in the record.

### b.    Plaintiff's Rejection Of Treatment Options

A claimant's failure to follow a prescribed course of treatment which would ameliorate his or her impairment(s), without good reason, is a valid reason to deny a claim for benefits.  20 C.F.R. §§ 404.1530(b), 416.930(b); *see also* Orn, 495 F.3d at 638 (when a claimant complains about disabling pain but fails to follow prescribed treatments, an ALJ may use that as grounds for finding the complaint exaggerated); Social Security Ruling ("SSR") 82-59, 1982 WL 31384, at *1 (Jan. 1, 1982) (a claimant with a disabling impairment amenable to treatment that could restore his or her ability to work must follow that prescribed treatment to be found under a disability, unless there is a justifiable cause for failing to do so).[2]

---

[2] SSRs do not have the force of law, but are usually accorded deference.  *Holohan*, 246 F.3d at 1203 n.1.

However, it is improper to deny benefits on the basis of a declined treatment if that treatment is *suggested* rather than *prescribed*.  *Aguirre v. Astrue*, 2009 WL 3346741, at \*5 (C.D. Cal. Oct. 14, 2009) (citing *Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir. 1985); *Young v. Califano,* 633 F.2d 469, 472-73 (6th Cir. 1980); 20 C.F.R. §§ 404.1530, 416.930)); *see also Schena v. Sec'y of Health & Human Servs.,* 635 F.2d 15, 19 (1st Cir. 1980) ("That various physicians suggested [an] operation does not necessarily mean that they prescribed it."); *Garcia v. Astrue*, 2012 WL 3217851, at \*9 (C.D. Cal. Aug. 7, 2012) ("Indeed, the record reflects that [plaintiff's doctor] referred plaintiff to a spine surgeon for a consultation on August 5, 2009, but the Court is not aware of any evidence that any of plaintiff's doctors *prescribed* spinal surgery as treatment for her neck and back pain.") (internal citation omitted).

Here, the treatment records show Plaintiff was *advised* to consider treatment options (including surgery and cortisone injections), and that her physicians made *recommendations*, but it does not appear from the record that Plaintiff ever declined a *prescribed* treatment.  For example, the ALJ noted that Plaintiff was *advised* to proceed with a corticosteroid injection, which Plaintiff declined because she feared that she would have an adverse reaction.  AR 25, 231.  On May 6, 2011, Dr. Simic *recommended* surgery.  *Id.* at 25, 223.  On February 17, 2012, Dr. Simic *discussed* repeat injections and surgery with Plaintiff.  *Id.* at 25, 208.  On September 5, 2012, Dr. Grossman *recommended* thoracolumbar spinal fusion.  *Id.* at 27, 281.

On February 19, 2013, in response to Plaintiff's complaints of "severe pain" in her lower back "down to her left leg" that allegedly left her "[u]nable to walk[,]" Dr. Alaziz referred Plaintiff to a neurosurgeon, Todd Gravori, M.D.  AR 512.  That consultation took place on February 22, 2013.  *See id.* at 514-15.  Upon reviewing Plaintiff's medical history, and then conducting a physical examination, Dr. Gravori opined that Plaintiff's "back pain may be related to her previous lumbar disease, but her acute pain in her leg which is the limiting factor in her life now is most likely

related to stenosis and disc herniation which can be corrected with [a] variety of modalities…." *Id.* at 515. Dr. Gravori identified specific surgical options which he and Plaintiff discussed, along with the attendant risks and benefits. *Id.* Dr. Gravori noted Plaintiff would attend "a consultation with an anesthesiologist for purpose of safety of anesthesia" and would call him if she decided to proceed with surgery. *Id.* There is no indication that Dr. Gravori ever *prescribed* a surgery for Plaintiff.

The parties also disagree as to the applicability of SSR 82-59 in this matter. As noted above, SSR 82-59 provides, in relevant part, as follows:

> Individuals with a disabling impairment which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment.

SSR 82-59, 1982 WL 31384, at *1.

The underlying regulations similarly provide that "[i]f [a claimant] do[es] not follow the prescribed treatment without a good reason," he or she will not be found disabled. 20 C.F.R. §§ 404.1530, 416.930. The regulations and SSR 82-59 identify acceptable reasons for declining a prescribed treatment. Among those reasons are: (1) when surgery would be "very risky" for the claimant, or (2) when the claimant's fear of surgery is "so intense and unrelenting that it is, in effect, a contraindication to surgery." 20 C.F.R. § 416.930(c)(4); SSR 82-59, 1982 WL 31384, at *3.

Here, Defendant argues that "[a]s Plaintiff presents no reasons other than her knowledge of her sister's death (during an unidentified type of surgery, to address an unspecified condition), and her doctor's discussion of risks of surgery, SSR 82-59 does not justify her failure to follow prescribed treatment." Def. Memo. at 6. Even if it is assumed that Plaintiff was prescribed injections and/or surgery to treat her pain, Defendant's argument ignores an important fact. As Plaintiff notes, "the medical record documents [Plaintiff's] intense fear of surgery because her sister had

9

passed away under anesthesia *and they both had low blood pressure*." Pl. Memo. at 10 (emphasis added). Indeed, at the hearing, Plaintiff stated as follows:

> I'm in fear of because I have low blood pressure. That's why I still am thinking [about surgery], there is a 50/50 chance with that operation. It's a big operation. I have low blood pressure. I'm afraid that I might not wake up from anesthesia. That's why I saw another doctor, but still I'm debating on it. I'm in fear. Very bad fear about that operation.

AR 41.

Later, when pressed by the ALJ to explain what she meant when she referred to the "risks" of surgery, Plaintiff stated:

> About my low blood pressure because, in my family, 25 years old my aunt[3] passed away under the surgery because she got very low pressure, and they told me, I mean, you have to feel comfortable before you go to surgery. That's why I saw the anesthesi[ologist] too, but still I'm in fear. I couldn't decide yet that I might become paralyze, or I might become -- I might not be able to wake up. That's why it's bothering me. I'm not comfortable, but after, you know, I mean, once I'm taking this much of medication, I'm planning that I have to have it. As I said, I'm in very big fear.

*Id.* at 43. The ALJ remarked that he thought Plaintiff's fear was "unfounded" and baseless, but proceeded without further questioning on the subject. *Id.*

The second statement appears to suggest that the anesthesiologist Dr. Gravori referred Plaintiff to did not think her low blood pressure would make the procedure "very risky." 20 C.F.R. § 416.930(c)(4). However, that fact is not clear from the record or Plaintiff's testimony. Furthermore, it does not appear that the ALJ, or any of the physicians, investigated whether Plaintiff's fear is "so intense and

---

[3] It is unclear whether Plaintiff misspoke, or whether she had an aunt who passed away during surgery. Elsewhere, Plaintiff and Defendant refer to Plaintiff's *sister's* death during a surgical procedure. *See* Pl. Memo. at 10; Def. Memo. at 6.

10

unrelenting that it is, in effect, a contraindication to surgery" or any other procedure recommended separate from or in addition to surgery.   SSR 82-59, 1982 WL 31384, at *3.

Thus, for the reasons stated above, the Court finds that Plaintiff's rejection of treatment options was not a clear and convincing reason to reject her testimony.

### c.   *Inconsistent Statements To Treatment Providers*

The ALJ further found that Plaintiff had made inconsistent statements to her treating physicians.  AR 24, 26.  He cited two specific examples.

First, on April 4, 2011, Plaintiff presented to Dr. Molnar with left rib, lower back, and buttock region pain arising from a fall earlier that morning.  AR 233.  Dr. Molnar diagnosed "contusional-type injuries[,]" and advised Plaintiff to "limit her activities to tolerance."  *Id*. at 235.  Eleven days later, Plaintiff presented to Dr. Simic alleging she re-injured her "right shoulder after a fall on stairs on 4/4/11.  She noted increased pain which has not improved with rest."  *Id*. at 228.  The ALJ noted Plaintiff had "made no such complaints to Dr. Molnar" the day of the fall.  *Id.* at 24.

Second, at Plaintiff's first appointment with Dr. Grossman on June 13, 2012, he noted Plaintiff had an "18 month history of back pain which radiates down her left leg.  It seems to have [begun] following a fall in which she incurred multiple upper extremity injuries in November 2010.  Since that time, and especially over the last eight or nine months, she has had severe pain radiating down her left leg."  *Id.* at 197.  The ALJ noted that despite Plaintiff's assertions of severe pain "this was the first time in the record [Plaintiff] had ever made such a complaint.  Previous complaints of calf and leg pain were primarily aimed at the right leg."  *Id.* at 26.

Prior inconsistent statements are a permissible reason to discount credibility. *Smolen*, 80 F.3d at 1284 (an ALJ may consider prior inconsistent statements about symptoms in determining whether testimony regarding the severity of symptoms is credible); *see also* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts

between your statements and the rest of the evidence[.]").  However, the Court does not find the foregoing examples convincingly inconsistent to warrant affirmance.

First, Dr. Molnar noted that Plaintiff presented on April 4, 2011 for treatment of a "*new* condition of pain" resulting from her morning fall.  AR 233.  Thus, it is not clearly the case that Plaintiff's later presentation to Dr. Simic with renewed and increased right shoulder pain showed inconsistency.  Plaintiff could have reinjured her right shoulder during the fall, but presented to Dr. Molnar to address only her new injuries, and returned to Dr. Simic when her shoulder pain did not subside.

Second, even if June 13, 2012 was the first time that Plaintiff had complained to her treating physicians about sciatica and severe pain radiating down her left leg, subsequent treatment records corroborate her complaints.  For example, on July 25, 2012, Dr. Grossman noted that she continued "to complain of severe pain radiating down her left leg."  AR 282.  And on September 5, 2012, he noted that she returned "with ongoing complaints of both back pain, as well as radiating left lateral thigh and calf pain and numbness radiating all the way to her left foot."  *Id*. at 280.

Thus, the Court finds that the ALJ's finding that Plaintiff made inconsistent statements is not a clear and convincing reason to reject her testimony.

### d.    *Plaintiff's Daily Activities*

Finally, the ALJ found that Plaintiff's "statements regarding her capacity to perform daily activities were vague, but sufficient to elicit the suggestion that it was greater than that allowed by her allegedly debilitating pain."  AR 28.[4]

Inconsistencies between symptom allegations and daily activities "may be a clear and convincing reason to find a claimant less credible."  *Hernandez v. Colvin*, 2013 WL 1245978, at *7 (C.D. Cal. Mar. 25, 2013) (citing *Tommasetti*, 533 F.3d at 1040; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991)).  But "the mere

---

[4] Vagueness is a permissible reason to discredit a claimant's subjective statements. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).  But since he found them "sufficient," the ALJ does not seem to have rested his credibility determination on Plaintiff's vague responses.

fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Claimants do not need to "vegetate in a dark room" or be "utterly incapacitated" to receive Social Security benefits. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, the "inconsistent" activities the ALJ identified include chores, cooking, shopping, reading, attending church and community activities, watching television, spending time with others, going online, sending emails, making phone calls, using Skype, and going to the hair salon once a week. AR 28. The Court does not find those activities to be inconsistent with Plaintiff's pain allegations.

**B.   Dr. Alaziz's Opinion**

Having found that Plaintiff's statements were not properly rejected, the Court declines to address Plaintiff's second claim. *Hiler v. Astrue,* 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [the] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue,* 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[T]his Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

**C.   Remand is Warranted**

It is within the Court's discretion to determine whether to remand for further proceedings or order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). "A remand for an immediate award of benefits is appropriate, however, only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 2015 WL 4620123, at *7 (9th Cir. Aug. 4, 2015) (citation omitted). Before ordering a remand for an immediate award of benefits, the Court must find that "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, the Court remands for further proceedings to determine whether, given Plaintiff's statements, a reassessment of her RFC, or her ability to perform her past relevant work, is warranted.  The Court notes that further development of the record (*e.g.*, additional opinion evidence or vocational expert testimony) may be warranted and indeed useful in making that determination.

## V.

## CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  October 9, 2015

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

14